# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRIS BENNETT, JR.,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | **Case No.:** 3:22-cv-31 |
| : | |
| **FRANKSTOWN TOWNSHIP and** : | |
| **GEORGE HENRY, KENNETH WERTZ** : | **COMPLAINT IN CIVIL ACTION** |
| **and JAMES CALLAHAN in their** : | |
| **individual capacities,** : | |
| : | |
| **Defendants.** | |

Filed on Behalf of Plaintiff:
Chris Bennett, Jr.

Counsel of Record for this Party:

**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:   (412) 545-3015
Fax No.:     (412) 540-3399
E-mail:      jward@jpward.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRIS BENNETT, JR.,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | Case No.: 3:22-cv-31 |
| : | |
| **FRANKSTOWN TOWNSHIP and** : | |
| **GEORGE HENRY, KENNETH WERTZ** : | |
| **and JAMES CALLAHAN in their** : | |
| **individual capacities,** : | |
| : | |
| **Defendants.** | |

## COMPLAINT IN CIVIL ACTION

AND NOW, come the Plaintiff, Chris Bennett, Jr., by and through his undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendants, Frankstown Township, George Henry, Kenneth Wertz and James Callahan, of which the following is a statement:

## PARTIES

1. Plaintiff, Chris Bennett, Jr. (hereinafter "Mr. Bennett, Jr.") is an adult individual who currently resides at 307 Weaver Road, Duncansville, PA 16635.

2. Defendant, Frankstown Township is a municipal organization located at 2122 Frankstown Road, Hollidaysburg, PA 16648.

3. Defendant George Henry is a Supervisor for Frankstown Township, and his work address is 2122 Frankstown Road, Hollidaysburg, PA 16648.

4. Defendant Kenneth Wertz is a Supervisor for Frankstown Township, and his work address is 2122 Frankstown Road, Hollidaysburg, PA 16648.

2

5. Defendant James Callahan is a Supervisor for Frankstown Township, and his work address is 2122 Frankstown Road, Hollidaysburg, PA 16648.

## NATURE OF THE ACTION

6. This action arises under the

**JURISDICTION AND VENUE** Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq.* and the Occupational Safety and Health Act, 29 U.S.C. § 651, *et seq*. (hereinafter "OSH Act").

7. This Court has jurisdiction over Mr. Bennett, Jr.'s discrimination claims pursuant to 28 U.S.C. § 1331.

8. Mr. Bennett Jr. is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9. Mr. Bennett, Jr. was employed by Frankstown Township (hereinafter, "Defendant") since February 10, 2020, as a laborer.

10. Mr. Bennett, Jr. was qualified for the position he held with Defendants.

11. Due to the COVID-19 pandemic, five employees for Defendants tested positive for the virus in March 2021.

12. COVID-19 is a mild to severe respiratory illness that is caused by a novel coronavirus that causes fever, coughing, weakness, and in extreme cases, pneumonia and respiratory failure. The virus is extremely contagious and is transmitted through direct contact with respiratory droplets of an infected person or from touching surfaces contaminated with the virus and touching their face.

13. These individuals were permitted to return to work for Defendants after three (3) to four (4) days despite the Center for Disease Control ("CDC") recommending a ten (10) day quarantine when diagnosed with COVID-19.

14. Certain individuals were permitted to return to work while still contagious with COVID-19, they were coughing at the workplace, and some had an active fever.

15. Mr. Bennett, Jr. was distressed by Defendants' lack of safety protocols during this pandemic and his potential to exposure to COVID-19 while working.

16. Mr. Bennett, Jr. expressed concerned for his safety to supervisors George Henry ("Mr. Henry"), Kenneth Wertz ("Mr. Wertz") and James Callahan ("Mr. Callahan").

17. On March 22, 2021, Mr. Bennett, Jr. and two (2) other employees for Defendants received doctor's notes that stated they were not to return to work for ten (10) days or until the other COVID-19 positive employees tested negative.

18. Mr. Bennett Jr.'s doctor's note permitted him to return to work on April 8, 2021.

19. Mr. Henry did not accept this doctors' note as valid and he did not approve Mr. Bennett, Jr. taking time off.

20. At no time did Defendants or Mr. Henry offer FMLA leave or discuss options for leave due to their concerns of contracting COVID-19.

21. Defendants employ more than fifty (50) employees.

22. Mr. Bennett Jr. worked more than the required number of hours to be eligible for FMLA leave due to their own potential health issues.

23. Upon his return to work, Mr. Bennett, Jr. was asked to sign a disciplinary write up by Mr. Henry relating to alleged unexcused absences for which he had a doctor's note.

24. Mr. Henry told Mr. Bennett, Jr. that he would not receive his paycheck on the following Friday unless he signed the write up.

25. Mr. Bennett, Jr. was terminated on July 7, 2021

26. The reason for termination was alleged performance deficiencies.

27. Mr. Bennett, Jr.'s termination was a direct result of retaliation for raising concerns over the health and safety himself and others while working for Defendants.

28. The aforementioned conduct was in violation of Plaintiff's FMLA rights, the Civil Rights Act of 1983, and the First Amendment of the United States Constitution.

**COUNT I**
**INTERFERENCE IN VIOLATION OF**
**THE FMLA**
**(Chris Bennett, Jr. v. Defendants)**
**Jointly and Severally**

29. Mr. Bennett, Jr. incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

30. The FMLA provides in pertinent part, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights, violation of which is known as FMLA retaliation. *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, at 307 (3d Cir. 2012) (citing to 29 U.S.C. § 2615(a)(1)).

31. In order to demonstrate a claim for FMLA interference, a Plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185,

191–92 (3d Cir. 2014) (citing to *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F.Supp.2d 405, 446 (W.D. Pa. 2008); see also, *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).

32. Moreover, an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3rd Cir. 2012).

33. Under this regulatory interpretation, employers are barred from considering an employee's FMLA leave "as a negative factor in employment actions such as hiring, promotions, or disciplinary actions." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

34. Mr. Bennett, Jr., was employed for a qualified employer under the FMLA and was therefore entitled to leave pursuant to the FMLA.

35. Mr. Bennett, Jr. presented a doctor's note which should have triggered Defendants' acknowledgment and offer of FMLA.

36. Although not a formalistic standard to invoke rights under the FMLA, employees must give their employer "adequate notice", and in doing so the employee "need not expressly assert rights under the FMLA, or even mention the FMLA." Lichtenstein v. U. of Pittsburgh Med. Ctr., 691 F.3d 294, at 303 (3d Cir. 2012) (interpreting the language of 29 U.S.C. § 2612(e)(2) and 29 C.F.R. § 825.303(b)).

37. Mr. Bennett, Jr.'s termination was the ultimate result of the alleged unexcused time off which would have been invalidated by his exercising his FMLA rights.

38. Between Defendants' awareness of his need to leave, and the adverse employment decisions, Plaintiff's employer actively interfered with his rights to apply for and take FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

39. Defendants violated Mr. Bennett, Jr.'s rights by interfering with and/or restraining the exercise of his FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff, Chris Bennett, Jr., respectfully requests this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, and enter any and all wages due to Plaintiff, in excess of arbitration limits, as well as reasonable costs and attorney's fees and liquidated damages pursuant to the Family and Medical Leave Act of 1993 29 U.S.C. § 2601 *et seq.*

## COUNT II
**Common Law Wrongful Termination - Violation of a Clear Mandate of Public Policy by Failure to Provide Safe Work Environment in Violation of the Federal OSH Act as Adopted by Pennsylvania Law Under the Pennsylvania Worker and Community Right-to-Know Act, 35 P.S. § 7319**

1. Mr. Bennett, Jr. incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

2. In the Commonwealth of Pennsylvania, "as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Mikkhail v. Pennsylvania Org. for Women in Early Recovery*, 63 A.3d 313, 316 (Pa. Super. 2013).

3. However, an at-will employee "will be entitled to bring a cause of action for a termination of that relationship . . . where the termination implicates a clear mandate of public policy in the Commonwealth of Pennsylvania." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000).

4. Pennsylvania courts define public policy "by reference to the laws and legal precedents and not from supposed public interest." *Id.* at 288.

5. Under Pennsylvania law, it is well-established that the federal OSH Act is incorporated into the PWCRA, 35 P.S. § 7319 and that the two are to be read in conjunction with one another. See *Beck v. CNO Fin. Crp., Inc.*, 2018 WL 2984854 (Pa. E.D. Jun. 14, 2018); *Dille v. Day & Zimmerman NPA*, 2015 WL 3884889 (Pa. E.D. Jun. 24, 2015); *Lambert v. Envtl. Restoration Group Inc.*, 2008 WL 723328 (Pa. W.D. May 14, 2008); *Romig v. Northampton County Dep't of Corr.*, 2008 WL 818798 (Pa. E.D. Mar. 21, 2008); *Helfrich v. Lehigh Valley Hosp.*, 2005 WL 670299 (Pa. E.D. Mar. 18, 2005); *Fassl v. Our Lady of Perpetual Help Roman Catholic Church*, 2005 WL 2455253 (E.D. Pa. Oct. 5, 2005); *Wetherhold v. Radio Shack Corp.*, 339 F. Supp. 2d 670 (Pa. E.D. 2004).

6. PWCRA § 7319(b) states:

> Construction with Federal law. – This act is to be read in conjunction with any provision of Federal law providing for the identification, labeling or providing of information concerning hazardous substances and is intended to supplement such Federal regulation in the interests of protecting the health and safety of citizens of the Commonwealth.

35 P.S. § 7319(b).

7. When read together, the two are sufficient "to overcome a strong presumption in favor of the at-will employment be an objective reading of PWCRA §7319(b) supports that a Commonwealth health and safety law reflects 'the same public policy expressed by the federal government under OSHA.'" *Wetherhold v. Radio Shack Corp.*, 339 F. Supp. 2d 670, 681 (Pa. E.D. 2004).

8. Therefore, the policies expressed in the OSH Act are considered the public policies of the Commonwealth of Pennsylvania, which gives rise to a claim of wrongful termination when an employer retaliates against an employee for voicing complaints about real or perceived OSHA violations. The court in *Wetherhold* found that PWCRA §7313 and OSH Act 29 U.S.C.A. §660

were sufficiently analogous for 29 U.S.C.A. §660 to be adopted as public policy under Pennsylvania law. *Id.* at 681.

9. Under Section 5(a)(1) of the OSH Act, private sector employers are required to furnish a place of employment "free from recognized hazards that are causing or are likely to cause death or serious injury to employees." 29 U.S.C.S. §654(a).

10. Under OSH Act, Section 29 U.S.C.S. §654, also known as the General Duty Clause, employers are required to implement any feasible abatement measures to eliminate or materially reduce the hazard.

11. Section 11(c) of the Act further "prohibits reprisal or discrimination against an employee for speaking out about unsafe work conditions or reporting an infection or exposure to COVID-19 to an employer." 29 U.S.C.S. §660.[1]

12. But Pennsylvania courts have held that "a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of the Commonwealth of Pennsylvania is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation." McLaughlin, 750 A.2d at 291.

13. Under Pennsylvania law, it is well-established that the federal OSH Act is incorporated into the PWCRA, 35 P.S. § 7319 and that the two are to be read in conjunction with one another. See Beck v. CNO Fin. Crp., Inc., 2018 WL 2984854 (Pa. E.D. Jun. 14, 2018); Dille v. Day & Zimmerman NPA, 2015 WL 3884889 (Pa. E.D. Jun. 24, 2015); Lambert v. Envtl. Restoration Group Inc., 2008 WL 723328 (Pa. W.D. May 14, 2008); Romig v. Northampton County Dep't of Corr., 2008 WL 818798 (Pa. E.D. Mar. 21, 2008); Helfrich v. Lehigh Valley Hosp., 2005 WL 670299 (Pa. E.D. Mar. 18, 2005); Fassl v. Our Lady of Perpetual Help Roman

---

[1] *Id.*

Catholic Church, 2005 WL 2455253 (E.D. Pa. Oct. 5, 2005); Wetherhold v. Radio Shack Corp., 339 F. Supp. 2d 670 (Pa. E.D. 2004).

14. Therefore, Defendants are subject to the OSH Act's General Duty Clause and is required to provide a safe environment to its employees.

15. Defendants did not provide a safe environment for its employees by failing to enact adequate safety measures to prevent the spread of an airborne virus.

16. Defendants were notified by Mr. Bennett, Jr. that employees for Defendants were coming to work while contagious with COVID-19 symptoms.

17. Thus, Defendant was in violation of the public policy of the Commonwealth of Pennsylvania when it failed to provide safety measures to protect employees against the spread of COVID-19.

18. Mr. Bennet, Jr. is entitled to bring a cause of action against Defendants under the public policy exemption to at-will employment.

19. The OSH Act prevents an employer from terminating or disciplining an employee for refusing to report to work because he or she believes that he or she is in imminent danger. Id.; See 29 C.F.R. §1977.3; 29 C.F.R. §1977.12.

20. Further, under the OSH Act, employers may not discharge or discriminate against an employee for reporting work-related injuries of illnesses. 29 C.F.R. §1904.35(b)(1)(iii).

21. "Similar to PWCRA §7313, an employer may not engage in retaliatory or wrongful discharge under the OSH Act, 29 U.S.C.A. §660." *Wetherhold* at 680.

22. The court in *Wetherhold* found that PWCRA §7313 and OSH Act 29 U.S.C.A. §660 were sufficiently analogous for 29 U.S.C.A. §660 to be adopted as public policy under Pennsylvania law. Id. at 681.

23. Instead of subjecting himself to dangerous working conditions, Mr. Bennet, Jr. reported his concerns to Mr. Henry, Mr. Wertz and Mr. Callahan.

24. Under PWCRA §7313; 29 U.S.C.A. §660; 29 C.F.R.; 29 CFR §1977.3; 29 CFR §1977.12; and 29 C.F.R. §1904.35(b)(1)(iii), by terminating Mr. Bennett, Jr.'s employment, Defendants acted against public policy.

25. Under Pennsylvania law, the Defendants breached their duty to Mr. Bennett, Jr. both generally and in the following particulars:

   a. Failure to maintain a place of employment free from recognized hazards that are causing or are likely to cause death or serious injury to employees.

   b. Failure to make appropriate adjustments following Mr. Bennett, Jr's concerns; and

   c. By terminating Mr. Bennett, Jr.'s employment in retaliation after he filed a complaint with Defendants raising a reasonable concern about infection control related to COVID-19.

26. Additionally, the Commonwealth had set forth various restrictions on businesses to manage the COVID-19 pandemic:

   a. On March 19, 2020, Pennsylvania Governor Tom Wolf ("Governor Wolf") ordered all non-life sustaining businesses in Pennsylvania to close their physical locations to stop the spread of COVID-19.

   b. On April 27, 2020, Governor Wolf issued a directive for a three-phase reopening plan of non-life-sustaining businesses.

   c. On May 15, 2020, Blair County was moved from a red phase to yellow.

      d. As of June 12, 2020, Blair County was moved to green phase, where non-life-sustaining businesses can reopen following safety orders.

      e. During this period, the Pennsylvania Department of Health issued a directive for anyone exhibiting symptoms of COVID-19 to quarantine for ten days.

(https://ballotpedia.org/Documenting_Pennsylvania%27s_path_to_recovery_from_the_coronavirus_(COVID-19)_pandemic,_2020-2021).

27. Defendants did not provide a safe environment for its employees by failing to enact adequate safety measures and require employees to work along COVID-19-positive, symptomatic employees, which is a public health concern. This was in direct contravention to the public policy of the Commonwealth, as set forth hereinabove.

28. Defendants were aware, by their own directives, that safety protocols were not being observed by employees.

29. Additionally, Mr. Bennett., Jr. informed Defendants that there was an acute risk of COVID-19 exposure for employees.

30. Defendants violated the public policy of the Commonwealth when it retaliated against and terminated Mr. Bennett, Jr. for making such reports.

31. As a direct and proximate result of the above-mentioned breach, Mr. Bennett, Jr. suffered actual damages, loss of income, lost wages, emotional distress, annoyance and embarrassment.

32. Defendants' actions were knowing, intentional, reckless, and done with conscious indifference to the rights of Mr. Bennett, Jr.

    WHEREFORE, Mr. Bennett, Jr. hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Mr. Bennett, Jr., requests this Court award him back pay,

front pay, any other compensatory damages, costs, punitive damages, and such other relief as deemed just and proper.

## COUNT III
### RETALIATION FOR SPEAKING ON A MATTER OF PUBLIC CONCERN IN VIOLATION OF 42 U.S.C. §1983 and THE FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH

33. Mr. Bennett, Jr. incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

34. At all times relevant, Defendant corporation and Defendant individuals were state actors and acting with the direct authority of the state, and under color of state law.

35. Defendants terminated Mr. Bennett, Jr.'s employment in retaliation for his report of Defendants' violation of safety protocol.

36. Mr. Bennett, Jr. spoke as a citizen on a matter of public concern.

37. Therefore, Defendants terminated Mr. Bennett, Jr. in violation of his rights to speak freely and to petition for the redress of grievances under the First and Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. §1983.

38. At all times relevant hereto, Defendants acted as the state, or under color of state law, inasmuch as their acting as set forth at length above, constitute misuse of power possessed solely by virtue of state law and made possible only because Defendants is and was clothed with the authority of state law.

39. Mr. Bennett, Jr., as a citizen, has a right to speak on matters of public concern under the First and Fourteenth Amendment of the United States Constitution.

40. As set forth above, Mr. Bennett, Jr. was acting as a citizen speaking upon matters of public concern therefore, his speech is protected under the First Amendment of the United States Constitution.

41. Mr. Bennett, Jr., as a citizen of the United States, did not surrender his rights and privileges under the United States Constitution as a condition of employment with Defendants.

42. As described above, Defendants fired Mr. Bennett, Jr. in retaliation for his exercise of his First and Fourteenth Amendment right to speak on matters of public concern and petition for redress of grievances.

43. Defendants' actions were knowing, intentional, reckless, and done with conscious indifference to Mr. Bennett, Jr.'s federally protected right to exercise their First Amendment rights.

44. The conduct by Defendants, as set forth above, was a conscious choice on the part of Defendants to disregard Mr. Bennett, Jr.'s constitutional rights and deprived him under color of state law, and his rights of speech, and petition under the First and Fourteenth Amendments of the U.S. Constitution in violation of 42 U.S.C. §1983.

45. As a direct and proximate result of the above-mentioned breach, Mr. Bennett, Jr. suffered actual damages, loss of income, lost wages, emotional distress, annoyance and embarrassment.

WHEREFORE, Mr. Bennett, Jr. hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Mr. Bennett, Jr. requests this Court award him back pay, front pay, any other compensatory damages, costs, punitive damages, and such other relief as deemed just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC.**

Date: March 1, 2022                    By: */s/ Joshua P. Ward*
                                       Joshua P. Ward (Pa. I.D. No. 320347)

                                       J.P. Ward & Associates, LLC
                                       The Rubicon Building
                                       201 South Highland Avenue
                                       Suite 201
                                       Pittsburgh, PA 15206

                                       Counsel for Plaintiff